```
                UNITED STATES DISTRICT COURT
                         FOR THE
                   DISTRICT OF VERMONT

United States of America,    :
          Petitioner,         :
                              :
     v.                       :      File No. 2:05-MC-85
                              :
Judith T. Katz,               :
          Respondent.         :
```

OPINION AND ORDER
(Papers 1, 15, 17 and 24)

The government has filed a petition for judicial enforcement of an Internal Revenue Service ("IRS") summons.  The summons was issued as part of an investigation into respondent Judith Katz's tax liability for the years 2001, 2002 and 2003.  Katz, proceeding *pro se*, is contesting the summons, claiming that she has no tax liability.  Both parties have moved for summary judgment.  For the reasons set forth below, the government's petition is GRANTED.

Factual Background

Revenue Agent Alfons Dahm is seeking to conduct an investigation to determine Katz's tax liability for 2001, 2002 and 2003.  On May 2, 2005, Dahm served Katz with an administrative summons requiring her to appear and provide "[a]ll books, papers, records, and other data in your possession or control reflecting the receipt of

taxable income by you for the years 2001 through 2003 . . . ." (Paper 1-2 at 2). Katz failed to comply with the summons. On August 8, 2005, the government initiated this action by filing a petition for judicial enforcement of the summons pursuant to 26 U.S.C. §§ 7402(b) and 7604(a). (Paper 1-4).

In response to the government's petition, Katz has filed an answer and a motion for summary judgment in which she argues that she has no tax liability. (Papers 14 and 15). Specifically, Katz claims that she obtained her tax records from the IRS pursuant to the Freedom of Information Act and, according to her "decoding" of those records, discovered errors. The errors allegedly designated her as a resident of the Virgin Islands and a person involved in the manufacture of guns, neither of which is accurate. Katz claims that she submitted corrections to the IRS, and that these corrections absolved her of any tax liability. She further claims that a code in a subsequent IRS record confirmed that she has no tax liability. (Paper 15-3 at 10, 13, 21 and 25).

There is no dispute that Katz is not a resident of the Virgin Islands and that she is not involved in the

manufacture of guns.  The parties do not agree on the accuracy of Katz's decoding efforts, but the government argues that the accuracy of the decoding is immaterial: "Even if [Katz's decoding is] accurate, the IRS would nevertheless be entitled to investigate and determine her tax liability."  (Paper 18 at 9).

## Discussion

"Because our system of federal taxation relies on self-reporting, it is essential that the IRS have the power to issue administrative summonses in order to have effective oversight."  Upton v. I.R.S., 104 F.3d 543, 545 (2d Cir. 1997) (citing United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984) and United States v. Bisceglia, 420 U.S. 141, 145-46 (1975)).  Congress has therefore given the IRS "a 'broad mandate to investigate and audit persons' to insure compliance with federal tax laws."  Upton, 104 F.3d at 545 (quoting Bisceglia, 420 U.S. at 145).  "As a necessary incident to the investigatory power," Congress has given the IRS "expansive authority" to:

> summon the person liable for tax . . . or any
> other person the Secretary may deem proper, to
> appear before the Secretary at a time and place
> named in the summons and to produce such books,

3

>papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

Upton, 104 F.3d at 545-46 (citing 26 U.S.C. § 7602(a)(2)).

To enforce a tax summons, the IRS must show that it has complied with four requirements: (1) that the investigation has a proper purpose; (2) the information sought may be relevant to that purpose; (3) the IRS does not already have the information; and (4) the IRS has followed the statutory requirements for issuing a summons. United States v. Powell, 379 U.S. 48, 57-58 (1964). These "requirements impose only a minimal burden" on the IRS. Miller v. United States, 150 F.3d 770, 772 (7th Cir. 1998). Affidavits by the investigating agent ordinarily are sufficient to make out the *prima facie* case for enforcement. PAA Mgmt., Ltd. v. United States, 962 F.2d 212, 219 (2d Cir. 1992).

Once the government has met its *prima facie* burden, "the taxpayer faces a 'heavy burden' to either present facts to disprove one of the Powell factors, or to show that the IRS issued the summons in bad faith." Miller, 150 F.3d at 772 (citation omitted); see also United

4

States v. LaSalle Nat'l Bank, 437 U.S. 298, 316 (1978) (taxpayer has "heavy" burden of "disprov[ing] the actual existence of a valid civil tax determination or collection purpose by the Service"); United States v. Kis, 658 F.2d 526, 535 (7th Cir. 1981), cert. denied, 455 U.S. 1018 (1982) (taxpayer has "extraordinarily heavy burden" to rebut *prima facie* case).

"Summons enforcement proceedings are intended to be summary in nature so that an investigation can advance to an ultimate determination as to whether tax liability exists." United States v. White, 853 F.2d 107, 111 (2d Cir. 1988) (citing Kis, 658 F.2d at 536). "Therefore, the primary issue presented by a summons enforcement proceeding is *not* whether the IRS has established, or is even likely to establish guilt or liability on the taxpayer's part; rather, the issue is whether the IRS had a valid tax determination or collection purpose in issuing its summons." Id. (emphasis in original).

Here, Agent Dahm states in his affidavit that he is conducting an investigation to determine Katz's tax liability.  Although Katz may dispute the existence of this liability, her dispute does not render the

5

investigation illegitimate.  Id.; see also Muratore v. Dep't of the Treasury, 315 F. Supp. 305, 308 (W.D.N.Y. 2004).  "While the IRS may conclude that [Katz does] not owe taxes for the years under investigation, this determination can only be made after reviewing the information summoned."  Villella v. United States, 2000 WL 968773, at *4 (S.D.N.Y. July 12, 2000).

Katz argues that the summons in question is barred by the "institutional posture" test.  Specifically, she argues that despite Agent Dahm's desire to conduct an investigation, her decoding of IRS records shows that she has no tax liability.  Therefore, Katz contends, the "institutional posture" of the IRS is that she has no liability, and there is no legitimate ground for an investigation.

In LaSalle Nat'l Bank, the Supreme Court formulated the "institutional posture" test in an effort to determine whether an IRS summons was enforceable.  437 U.S. at 316.  The specific issue being addressed by the Supreme Court was whether the summons in question was being used permissibly to investigate a civil tax liability, or impermissibly to pursue a criminal

violation.  Id.; see United States v. Millman, 822 F.2d 305, 308 (2d Cir. 1987).[1]  The Supreme Court stated that "the line between enforceable and unenforceable summonses should not be 'drawn . . . on the basis of the agent's personal intent.'" Millman, 822 F.2d at 308 (quoting LaSalle Nat'l Bank, 437 U.S. at 316).  Instead, "the purposes of the good faith inquiry is to determine whether the *agency* is honestly pursuing the goals of § 7602 by issuing the summons."  LaSalle Nat'l Bank, 437 U.S. at 316 (emphasis added).

The Second Circuit has interpreted LaSalle Nat'l Bank to mean that a person challenging an IRS summons "must show the absence of a valid purpose underlying the summons, and must do so by reference to the IRS's institutional posture . . . ."  Millman, 822 F.2d at 309.  In Millman, an individual agent was found to have had a "distaste" for taxpayer Millman.  Id. at 309.  Millman argued that this agent's hostility infected the agency

---

[1] At that time, a summons under § 7602 could not be used to obtain evidence in a criminal case.  In 1982, Congress amended § 7602 to permit the issuance of a summons for "'the purpose of inquiring into any *offense* connected with the administration or enforcement of the internal revenue laws.'" Millman, 822 F.2d at 308 (emphasis in original) (quoting 26 U.S.C. § 7602).

7

and caused the issuance of an IRS summons.  The Second Circuit, however, upheld the lower court's finding that others within the agency had independently selected Millman as a potential target for investigation.  The court also cited the "substantial oversight within the IRS."  Id.  Therefore, the Second Circuit concluded that the agent's hostility was not "so pervasive as to have become the institutional posture of the IRS," and affirmed the enforcement of the summons.  Id.

In this case, Katz makes no allegation that Agent Dahm's summons lacks the support of his superiors and/or other agents at the IRS.  Nor does she allege bad faith beyond her contention that Agent Dahm has been aware of, and has thus far rejected, her claim that she owes no taxes.  (Paper 26-1 at 5-6).  Furthermore, and unlike the facts contemplated in LaSalle Nat'l Bank and Millman, there is no question about the true purposes or motives behind the investigation.

Assuming, *arguendo*, that the "institutional posture" test applies here, Katz has failed to show that the IRS's investigation violates that test.  Agent Dahm has stated that he is conducting an investigation which, on its

8

face, serves the legitimate purpose of investigating Katz's tax liability.  Katz insists that an investigation would be inconsistent with IRS codes and documents, and that these codes and documents constitute the IRS's institutional posture.  Katz has not, however, carried her "heavy burden" of showing that Agent Dahm is acting independent of his agency's position with respect to her tax liability, or that the IRS is acting without a valid purpose when it questions her liability.  Furthermore, an argument of no tax liability cannot, alone, overcome an IRS summons.  See Villella, 2000 WL 968773, at *4 (citing Cybulski v. United States, 1984 WL 1222, at *1 (S.D.N.Y. Nov. 9, 1984)).

Given that the IRS is investigating Katz for a legitimate tax-collection purpose, and Katz has failed to carry her burden with respect to any valid defense, the Court turns to the remaining Powell factors.  The materials requested are plainly relevant to the agency's inquiry, as they consist of documents in Katz's possession "reflecting the receipt of taxable income by you for the years 2001 through 2003 . . . ."  (Paper 1-2 at 2).  Agent Dahm has testified that these documents are

not in the IRS's possession, and Katz has not refuted this claim other than to say that because she has no liability, no documents will be responsive. (Paper 1-2 at 1).  Finally, the government has followed the required statutory steps by delivering a summons and, after Katz failed to appear, seeking enforcement in this Court.  See 26 U.S.C. §§ 7603 & 7604(a).  The Court therefore finds that the Powell requirements have been met, and the government's petition for enforcement of the summons is hereby GRANTED.

## Conclusion

For the reasons set forth above, the government's petition (Paper 1) and motion for summary judgment (Paper 17) are GRANTED.  Katz's motion to amend her undisputed statement of facts (Paper 24) is GRANTED, and her motion for summary judgment (Paper 15) is DENIED.  Katz shall comply with the summons issued to her at a time and place designated by Agent Dahm or any other proper Agent or employee of the IRS.

Dated at Burlington, in the District of Vermont, this 13th day of March, 2006.

<pre>
                    /s/ William K. Sessions III
                    William K. Sessions III
                    Chief Judge, United States District Court
</pre>